```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
                   HOUSTON DIVISION

RONALD MAY,                     §
TDCJ-CID NO.1510892,            §
         Plaintiff,             §
v.                              §   CIVIL ACTION NO. H-09-0865
WANDA ISBELL,                   §
         Defendant.             §
```

MEMORANDUM AND ORDER ON DISMISSAL

Plaintiff Ronald May, a state inmate proceeding *pro se* but not *in forma pauperis*, filed a complaint alleging violations of his civil rights under 42 U.S.C. § 1983. (Docket Entries No.1, No.6, No.19, No.36). On October 30, 2009, the Court dismissed all of plaintiff's claims except his deliberate indifference claim against Nurse Practitioner Wanda Isbell. (Docket Entry No.42). Defendant Isbell has now filed a motion for summary judgment. (Docket Entry No.64). Plaintiff has not filed a response to the motion.

For the reasons to follow, the Court will grant defendant's motion for summary judgment and deny plaintiff's pending motions.

I. BACKGROUND

Plaintiff claims that he has a bullet lodged in his right leg that defendant Isbell refuses to remove even though she is aware that the bullet has surfaced to the top of his skin and is hitting a nerve. (Docket Entry No.28). Plaintiff also complains that Isbell refused to move him to the ground floor or first row even though he has a total hip replacement and a bullet in his leg. (Docket Entry No.6, page 11). Plaintiff seeks compensatory,

nominal, and punitive damages. He also seeks to be restricted to row one on his unit. (Docket Entry No.1).

Isbell moves for summary judgment on grounds that she is entitled to judgment as a matter of law on plaintiff's medical deliberate indifference claims. She also asserts the defenses of Eleventh Amendment immunity and qualified immunity. (Docket Entry No.64).

## II. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." Hamilton v. Seque Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000) (quoting Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994)).

2

A. Eleventh Amendment

Eleventh Amendment immunity bars a suit in federal court by a citizen of a state against his own state or against a state agency or department. Hughes v. Savell, 902 F.2d 376, 377-78 (5th Cir. 1990). Eleventh Amendment immunity has a jurisdictional effect; it deprives a federal court of jurisdiction to hear a suit against a state. Warnock v. Pecos County, Tex., 88 F.3d 341, 342 (5th Cir. 1996). This immunity extends to suits for monetary damages against state officials in their official capacity. Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 609 n. 10 (2001) (holding "[o]nly States and state officers acting in their official capacity are immune from suits for damages in federal court"). Accordingly, to the extent that plaintiff seeks monetary damages against defendant Isbell in her official capacity as an employee of the State, such claims are subject to dismissal.

B. Qualified Immunity

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 199-200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

3

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, - U.S. -, 129 S.Ct. 808, 818 (2009).

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. Id. at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. Id. at 837, 839; Lawson v. Dallas County, 286 F.3d 257, 262 (5th Cir. 2002).

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's

4

needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle, 429 U.S. at 104-05. "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." Id. Assertions of inadvertent failure to provide medical care or negligent diagnosis, however, are insufficient to state a claim. Wilson v. Seiter, 501 U.S. 294, 297 (1991).

Defendant Isbell contends that plaintiff's "allegations are merely reiterations of his opinion on what type of medical care he believes his condition requires" and are not supported by his medical records or any competent medical opinion. (Docket Entry No.64). In support of this contention, Dr. Steven Bowers attests that plaintiff suffers from numerous problems with his hip and legs and that he has a bullet fragment lodged in his right leg. (Docket Entry No.64-2, page 4). Dr. Bowers also attests that no medical reason exists to remove the bullet fragment from plaintiff's leg "as evidenced by multiple exams by different providers." (Docket Entry No.64-2, page 4). Dr. Bowers indicates that bullet fragments are often left in place and allowed to move on their own to the surface of the body unless they are compressing a vital structure

5

or causing an infection. (Id.). He attests that they rarely cause significant pain or disability and are generally removed for cosmetic reasons. (Id.).

Plaintiff's medical records show that on July 18, 2008, Dr. Hung Dao noted in the Physician's Clinic Notes that plaintiff has a superficial foreign object, possibly a bullet fragment, in his right leg; Dr. Dao found no sign of infection or involvement with the neurovascular system. He further found "no medical indication to remove it at [the] present time." (Docket Entry No.64-3, pages 8). On December 22, 2008, defendant Isbell examined plaintiff for a knot on his lower right leg, which she found to be a firm, non-mobile nodule and possibly a bullet fragment; she ordered an x-ray to rule out a foreign body. (Docket Entry No.64-4, page 7). Plaintiff denied any pain or discomfort from the knot. (Id.).

The Radiology Report dated January 26, 2009, showed a bullet fragment "projecting into the subcutaneous tissues muscle planes around the mid half region of the tibia and fibula." (Id., page 15). Plaintiff filed the pending civil rights complaint on February 18, 2009. (Docket Entry No.1). Months later, on November 25, 2009, Isbell examined plaintiff for swelling to his right lower extremity, and noted his complaint that the area around the bullet fragment hurt on occasion. (Docket Entry No.64-4, page 35). Isbell observed some swelling to the right leg but no redness, excessive warmth, or pain with compression to the calf. (Id.).

Based on these findings, she concluded that there was no medical imperative to remove the bullet fragment at that time. (Id.). She ordered compression stockings and continued plaintiff's pain medication. (Id.).

Dr. Bowers also attests that the bullet fragment in plaintiff's leg required no special consideration for ground floor housing because the fragment did not impact plaintiff's ability to ambulate the stairs. (Docket Entry No.64-2, page 4). Bowers indicates that although plaintiff's other orthopedic issues may have impacted his ability to ambulate the stairs, the decision to assign him to a ground floor was a judgment call by health care providers. (Id.).

Plaintiff's Health Summary Record shows that Dr. Dao did not assign plaintiff to the ground floor on July 25, 2008. (Docket Entry No.64-3, page 11). Likewise, defendant Isbell did not restrict plaintiff's row assignment on September 3, 2008, and November 12, 2008. (Id., pages 20, 21). On November 14, 2008, plaintiff was seen by a physician, who noted that he ambulated without distress. (Id., page 26). On November 19, 2008, plaintiff requested to be "one row restricted." (Id., page 30). The response to the request reflects that plaintiff had been seen and the issue addressed on November 14, 2008. (Id.). Plaintiff was seen in the infirmary on November 24, 2008, where he again requested the physician to assign him to the ground floor. (Docket

7

Entry No.64-4, page 3). The physician ordered a hip x-ray. (<u>Id.</u>). In early December 2008, defendant Isbell reminded staff about plaintiff's scheduled x-ray. (<u>Id.</u>, page 4). On December 8, 2008, plaintiff submitted another sick call request seeking a ground floor assignment; he was told that the staff was awaiting the radiology report. (<u>Id.</u>, page 5). The Radiology Report was issued on December 12, 2008, but not transcribed until January 26, 2009. (<u>Id.</u>, pages 9, 15).

On January 2, 2009, defendant Isbell asked to have plaintiff scheduled to see her to discuss a referral to a specialist. (<u>Id.</u>, page 10). She did not, however, give him a ground floor restriction on the January 8, 2009, Health Summary form. (<u>Id.</u>, page 11). On January 26, 2009, defendant Isbell submitted a referral for plaintiff to be seen by an orthopedic specialist. (<u>Id.</u>, page 16). Plaintiff refused the clinic visit on February 9, 2009. (<u>Id.</u>, page 19). On March 12, 2009, plaintiff submitted another sick call request for a ground floor restriction. (<u>Id.</u>, page 20). Defendant Isbell responded that he would be scheduled to see a physician in two to four weeks. (<u>Id.</u>). On March 31, 2009, plaintiff was examined by a physician, who again referred him to a specialist and gave him a permanent one row restriction. (<u>Id.</u>, pages 21, 23).

The record does not show that defendant Isbell wantonly disregarded plaintiff's health needs or subjectively intended that

8

harm occur to plaintiff by denying him an operation to remove the bullet fragment from his leg or by denying him a ground floor housing assignment. The record shows that Isbell based her decisions on her personal observations and medical judgment and that she responded to plaintiff's requests and scheduled appointments for him with other providers. Plaintiff's dissatisfaction with the medical treatment he received from defendant Isbell does not mean that he suffered deliberate indifference. *See e.g.,* <u>Norton v. Dimazana</u>, 122 F.3d 286, 291-92 (5th Cir. 1997); <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991) (holding inmate's "disagreement with his medical treatment" not sufficient to show Eighth Amendment violation); <u>Fielder v. Bosshard</u>, 590 F.2d 105, 107 (5th Cir. 1979) (finding "[m]ere negligence, neglect or medical malpractice is insufficient" to show Eighth Amendment violation). Because the record does not give rise to a fact issue as to whether defendant Isbell violated plaintiff's constitutional rights, she is entitled to summary judgment as a matter of law. Plaintiff's claims against defendant Isbell are subject to dismissal.

### III. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Plaintiff's motions for discovery (Docket Entries No.73, No.75) are DENIED.

2. For the reasons stated in the Order signed January 27, 2010 (Docket Entry No.55), plaintiff's motion for the appointment of counsel (Docket Entry No.74) is DENIED.

3. Defendant Isbell's Motion to Seal her Motion for Summary Judgment and Exhibits (Docket Entry No.65) is GRANTED.

4. Defendant Isbell's motion for summary (Docket Entry No.64) is GRANTED. Plaintiff's complaint is DISMISSED WITH PREJUDICE. All claims against defendant Wanda Isbell are DISMISSED.

5. All other pending motions, if any, are DENIED.

It is so ORDERED.

Signed at Houston, Texas, on _____June 29_____, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE